IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GOMEZ,<br><br>    Petitioner,<br><br>v.<br><br>ROBERT AYERS, Warden,<br><br>    Respondent. | No. C 06-4561 SBA (pr)<br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS<br>CORPUS ON ALL CLAIMS** |

## INTRODUCTION

Petitioner Ruben Gomez, a state prisoner incarcerated at San Quentin State Prison (SQSP) in San Quentin, California, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition will be DENIED as to all claims.

## BACKGROUND

In 1984, Petitioner pled guilty to second degree murder with use of a firearm in the Los Angeles County Superior Court. In September, 1985, he was sentenced to a term of fifteen years to life in state prison, plus a two-year gun enhancement.

On November 29, 2004, after serving more than twenty-two years in prison and being denied parole at six prior parole hearings, Petitioner was found suitable for parole by the Board of Prison Terms (BPT).[1] The final decision was made by the BPT on March 29, 2005. On April 13, 2005, Governor Arnold Schwarzenegger reversed the BPT's finding of parole suitability.

The present petition does not challenge Petitioner's underlying conviction. Rather, Petitioner asserts that the Governor's parole reversal was arbitrary and capricious, thus violating his right to due process (claim one). Petitioner also claims the Governor's parole reversal violated the terms of his

---

[1] The BPT was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a). However, in this Order, the Court will refer to it as the BPT.

plea agreement (claim two).[2]

## I. The Commitment Offense

The Governor's Indeterminate Sentence Parole Release Review included the following information about the murder:

> On Friday, July 20, 1984, 47-year-old Ruben Gomez, his coworker 28-year-old Victor Godoy, and three other men drank beer together in a Los Angeles alley after work. Mr. Gomez and Mr. Godoy at some point began arguing, and once Mr. Gomez threatened Mr. Godoy with a knife, the other men broke up the altercation. Mr. Gomez subsequently walked away, but indicated he would be back.
>
> Mr. Gomez went home, retrieved a .22-caliber rifle, and returned with it to the alley approximately 10 minutes later. After screaming at Mr. Godoy, Mr. Gomez started firing the rifle at him. Mr. Godoy tried to run away, but he was struck by gunshots and fell to the ground. Mr. Gomez then fired at least one more shot into Mr. Godoy. Mr. Godoy died.
>
> Mr. Gomez was captured by the other men at the scene and held until police arrived and arrested him. A Mexican national, he had been in the United States for approximately 10 years at the time and had no documented history of criminal conduct. He pled guilty to second-degree murder with the use of a firearm and was sentenced to 17 years to life in prison.

(Resp't Ex. 5, Indeterminate Sentence Parole Release Review at 1.)

Petitioner gave testimony concerning the murder at his November 29, 2004 parole consideration hearing. According to Petitioner, Mr. Godoy frequently insulted him and, on the night of the murder, threatened Petitioner's life. (Resp't Ex. 2, Parole Hr'g Tr. at 13.) Petitioner admitted he had lost control on the night of the murder, but he attributed this response to the alleged verbal threats of the victim. (Id. at 12.)

Petitioner pled guilty to second degree murder and, in turn, he received a sentence of seventeen years to life in prison. His minimum eligible parole date was August 10, 1994.

## II. Parole Proceedings

Petitioner was found unsuitable for parole by the BPT six times before his 2004 parole

---

[2] Petitioner raises a third claim that the Los Angeles County Superior Court used vague criteria for determining suitability so as to make its ruling unconstitutionally "void for vagueness." (Pet. at 10.) However, the Court will not address this claim because it is unexhausted as it was not raised in the state courts below.

2

consideration hearing. At his seventh parole suitability hearing on November 29, 2004, the BPT considered Petitioner's individual circumstances tending to show parole suitability and unsuitability. The panel considered Petitioner's central file and prior hearing transcripts in making its decision to find Petitioner suitable for parole. After announcing their final decision on March 29, 2005, the BPT noted the Governor had the power to review it. (Resp't Ex. 3, BPT Letter to Pet'r at 1.)

On April 13, 2005, the Governor reviewed the parole decision and reversed the BPT's decision finding Petitioner suitable for parole. In his reversal, the Governor discussed the following: (1) the "calculated and particularly cruel" nature of the commitment offense; (2) that Petitioner lacked understanding of the nature and magnitude of the murder; and (3) that Petitioner did not have adequate evidence to validate his alleged plans upon being paroled. (Resp't Ex. 5 at 2-3.)

**III.     State Habeas Proceedings**

After the Governor's parole reversal, Petitioner sought habeas corpus relief in the state courts. On November 8, 2005, the Los Angeles County Superior Court denied his petition in a reasoned decision in which it concluded that there was "some evidence" to support the Governor's decision. (Resp't Ex. 12, L.A. County Super. Ct. Order at 3.) The court also found the Governor's reversal did not violate Petitioner's plea agreement as Petitioner had "accepted an indeterminate sentence with a maximum of life." (Id.) The California Court of Appeal for the Second District summarily denied his petition on March 22, 2006. The Supreme Court of California also denied his petition without comment on June 14, 2006.

**DISCUSSION**

**I.     Subject Matter Jurisdiction**

Respondent argues the petition should be dismissed for want of subject matter jurisdiction because Petitioner has no federally protected liberty interest in parole. Respondent's argument is without merit.

Respondent relies on In re Dannenberg, 34 Cal. 4th 1061, cert. denied, 546 U.S. 844 (2005), as authority for his contention that the California statute does not create a liberty interest in parole. This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. See

1  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006) ("California inmates continue
2  to have a liberty interest in parole after [Dannenberg].").
3       Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide
4  whether Petitioner's right to due process was violated by the Governor's decision reversing the BPT's
5  finding of parole suitability.

## II.    The Merits

### A.    Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass, 461 F.3d at 1126-27.

#### 1.    Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362,

4

402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### a.    Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging

6

the overruling of <u>Van Tran</u> on this point).  After <u>Andrade</u>,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

<u>Id.</u>  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).

### 2. Section 2254(d)(2)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state court record.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### 3. Review of Parole Suitability Decisions

The Ninth Circuit has applied § 2254(d) to review of parole suitability decisions.  <u>See Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); <u>see also</u> <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002) (assuming without deciding that AEDPA deferential standard of review under § 2254 applies to such decisions).

### B. Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  <u>See</u> 28 U.S.C. § 2254(b), (c).  Petitioner's state court remedies were exhausted for

7

1   claims one and two asserted in this petition as they were presented to and denied by the California
2   Supreme Court.

### C. Legal Claims

Petitioner claims that the Governor's parole reversal: (1) violated his right to due process by being arbitrary and capricious; and (2) violated the terms of his plea agreement.

#### 1. Due Process Violation

##### a. Requirements of Due Process

A parole authority's decision satisfies the requirements of due process if "some evidence" supports the decision. McQuillion, 306 F.3d at 904 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445 (1985)); see also Biggs v. Terhune, 334 F.3d 910, 915 (9th. Cir. 2003). The evidence underlying a board's decision also must have some indicia of reliability. McQuillion, 306 F.3d at 904; Biggs, 334 F.3d at 915. In Biggs, the Ninth Circuit held the "some evidence" standard may be considered in light of a board's decision-making process over time. See id. at 917.

##### b. Parole for Murderers in California

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a minimum term of twenty-five years to life and a second degree murder conviction yields a minimum term of fifteen years to life imprisonment. See Dannenberg, 34 Cal. 4th at 1078; Cal. Penal Code § 190. The upshot of California's parole scheme described below is that a release date normally must be set unless certain factors exist, but the "unless" qualifier is so great that parole is a rarity rather than the norm for murderers.

California Penal Code § 3041(a) states a BPT panel shall meet with an inmate one year before the prisoner's minimum eligible release date and shall normally set a parole release date. Cal. Penal Code § 3041(a).

> The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any

8

sentencing information relevant to the setting of parole release dates.

Id. Significantly, this statute also provides:

> The panel . . . shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations § 2401, provides:

> A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.

Cal. Code Regs. tit. 15, § 2401. The regulation also provides:

> The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

Id. § 2402(a). The panel may consider all relevant and reliable information available to it. Id. § 2402(b).

The Governor is authorized to review the BPT's decision. The Governor does not have unfettered discretion but, rather, must make his parole decisions based on the same factors discussed above that the BPT must consider. See In re Rosenkrantz, 29 Cal. 4th 616, 625-26 (2002).

> Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the Governor. As with the discretion exercised by the Board in making its decision, the precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Governor, but the decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious.

Id. at 677.

"The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider." Cal. Const. art. V, § 8(b). The constitutional provision also provides that no decision of the BPT on a life prisoner's

parole eligibility becomes effective for a period of thirty days, during which the Governor may conduct his review. Nothing in the regulations, statutes or state constitution appears to require any deference by the Governor to the BPT's decision. That is, he must consider the same factors and same evidence as the BPT but need not defer to its findings.

The regulations contain a matrix of suggested base terms that is apparently the source of many prisoners' dashed hopes. The matrix provides three choices of suggested base terms for several categories of crimes. See Cal. Code Regs. tit. 15, § 2403. For second degree murders, the matrix of base terms ranges from a low of fifteen, sixteen or seventeen years, to a high of nineteen, twenty or twenty-one years, depending on certain facts of the crime.[3] Although the matrix is used to establish a base term, this occurs only once the prisoner has been found suitable for parole. See id. § 2403(a).

The statutory scheme elevates a prisoner's suitability for parole above their expectancy in the early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 Cal. 4th at 1070-71.

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets and parentheses in original). Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner *who is found suitable for parole*." Cal. Code Regs. tit. 15, § 2403(a) (emphasis added). "[T]he Board, exercising its traditional broad discretion, may protect public safety *in each discrete case* by considering the dangerous implications of a life-maximum prisoner's crime individually." Dannenberg, 34 Cal. 4th at 1071

---

[3] One axis of the matrix concerns the relationship between murderer and victim, and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," and "no prior relationship." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," or "severe trauma." Each of the choices is further defined in the matrix. See Cal. Code Regs. tit. 15, § 2403(c). Here, Petitioner served more than twenty-two years in prison before being granted parole by the BPT.

(emphasis in original). The California Supreme Court's determination of state law is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629 (1988); Sandstrom v. Montana, 442 U.S. 510, 516-17 (1979).

The California Supreme Court has also determined the facts of the crime alone can support a sentence longer than the statutory minimum, even if everything else about the prisoner is laudable. "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also Rosenkrantz, 29 Cal. 4th at 682-83 ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). The rules that govern the BPT's decision also control the Governor's decision in California: both must look at the same evidence and consider it under the same guidelines.

### c. Analysis Under "Some Evidence" Standard

What little guidance has come from the Supreme Court suggests that the "some evidence" standard is extremely deferential to the original decisionmaker. See Hill, 472 U.S. at 454 (An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence; the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the decision-maker.). Moreover, the Supreme Court's comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 13 (1979). "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior." Id.

A prisoner's commitment offense, on its own, may justify parole denial if the BPT, or in this

11

case, the Governor, can "'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." Irons v. Carey, 505 F.3d 846, 852 (9th Cir. 2007) (quoting Dannenberg, 34 Cal. 4th at 1071). Thus, pursuant to Irons, the Governor may rely on unchanging factors to find an inmate is unsuitable for parole.

Title 15 of the California Code of Regulations § 2402 sets forth the circumstances that tend to show unsuitability for parole release. Section 2402(c)(1) provides the nature of a commitment offense may justify denial if the "prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Code. Regs., tit. 15 § 2402(c)(1). The factors considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents;

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder;

(C) The victim was abused, defiled or mutilated during or after the offense;

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; and

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Id.

The Governor's findings sufficiently demonstrate that Petitioner is unsuitable for parole pursuant to Title 15 of the California Code of Regulations § 2402 and California Penal Code § 3041(b). The Governor reversed the BPT's decision to set a release date because he found "the manner in which [Petitioner] committed this murder . . . was calculated and particularly cruel." (Resp't Ex. 5 at 3.) The Governor's decision relied heavily on the gravity of the murder. (Id.) The Governor noted, "[t]he nature and circumstances of the second-degree murder of which Mr. Gomez was convicted were especially heinous." (Id.) Therefore, the Governor's finding that Petitioner's crime was carried out in an especially heinous and cruel manner constitutes some evidence for parole reversal.

In denying Petitioner's state petition, the Los Angeles County Superior Court held that, after

an individualized analysis, the Governor gave sufficient reasons on the record for denying Petitioner's parole:

> Here petitioner, after arguing with the victim and threatening to kill him with a knife, left vowing to return. A short time later he did return, armed with a gun and began firing. Those facts suggest some level of premeditated murder. Moreover, petitioner shot the victim multiple times. He certainly went beyond the minimum necessary to sustain a conviction for second-degree murder and the Governor can deny petitioner parole on that basis alone.
>
> An inmate may also be unsuitable for parole if he fails to understand the nature and magnitude of the commitment offense. Where guilt is uncontested, petitioner's version of the events may be "some evidence" he lacks remorse and understanding of the nature and magnitude of the offense. Petitioner told the Board he left and returned with a gun because he believed the victim would kill him and he wanted to scare the victim. He said "it never crossed my mind" to kill the victim and told the Board the victim was "insulting me all the time, every time he would see me he would insult me." Given that the official facts of the murder indicate petitioner originally removed himself from any potential danger only to return wielding a gun and shooting the victim multiple times, there is no indication that petitioner acted in self-defense. He expressed little or no remorse during the hearing for his actions and his explanation suggests he blames the victim for insulting him. As such, there is "some evidence" petitioner is unsuitable for parole because he lacks sufficient insight into the commitment offense.

(Resp't Ex. 12 at 2-3 (citations omitted).)[4]

Because the superior court's decision is the last reasoned decision regarding Petitioner's challenge to the Governor's parole reversal, it is this decision which this Court reviews under 28 U.S.C. § 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 547 U.S. 1138 (2006). Having reviewed the facts of the crime as recited by the Governor and the state court, and the other reasons stated for finding Petitioner ineligible for parole, the Court finds there was "some evidence" in the record to support the Governor's decision. The Court concludes the state court's decision to uphold the Governor's parole reversal was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2), nor was it contrary to, or an unreasonable application of, clearly established federal law, id. § 2254(d)(1). Accordingly,

---

[4] The superior court noted the Governor also discussed Petitioner's parole plans. However, the basis for the reversal was limited to the "calculated and particularly cruel" nature of the offense and Petitioner's lack of understanding of the magnitude of the murder. (Resp't Ex. 5 at 3.)

13

Petitioner's due process challenge to the Governor's parole reversal is DENIED.

### 2.  **Plea Agreement Violation**

Petitioner contends the Governor's reversal of the BPT's decision finding him suitable for parole violated his plea agreement. This claim lacks any evidentiary support. Petitioner was sentenced to seventeen years to life in prison. There is no evidence in the record that the parties to the plea agreement agreed the Governor would have no role in a parole determination. Without evidence of such a term, it follows it could not be breached.

In denying this claim, the Los Angeles County Superior Court held:

> The Court rejects petitioner's argument that the Governor's reversal violates his plea agreement. Petitioner accepted an indeterminate sentence with a maximum of *life*. He does not argue that anyone promised he would only serve the minimum term. The relevant statutes and regulations governing parole do not entitle a prisoner to release on parole, regardless of the amount of time served, unless he is found suitable. Accordingly, he will serve the maximum unless and until the Board and the Governor agree he is suitable for parole.

(Resp't Ex. 12 at 3 (citations omitted) (emphasis in original).)

Petitioner has the same sentence of seventeen years to life today that he received in 1985. He has not shown there was a plea agreement that contained any term that compelled the parole authority to ignore the facts of the crime in determining parole suitability. Petitioner's contention that he understood he would be paroled if he met suitability criteria does not aid him because the Governor determined he did not meet suitability criteria. Therefore, the Governor's decision did not violate Petitioner's 1985 plea agreement. Accordingly, this claim for relief is DENIED.

### **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 7/15/08

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GOMEZ, | Case Number: CV06-04561 SBA |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| ROBERT L. AYERS et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 16, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ruben C. Gomez
CDC C-93886
San Quentin State Prison
San Quentin, CA 94974

Dated: July 16, 2008

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk